UNITED STATES DISTRICT COURT
EASTTHERN DISTRICT OF NEW YORK

**--------------------------------------------------------------------------X**

MAGGIE LEE,

Plaintiff,

COMPLAINT

-Against-

OPOP, LLC D/B/A BEACON REHABILITATION
AND NURSING CENTER

Defendants.

--------------------------------------------------------------------------X

Plaintiff Maggie Lee ("Plaintiff" or "Ms. Lee"), by and through her counsel, The Law Offices of Jacob Aronauer, alleges against Defendant OPOP, LLC d/b/a Beacon Rehabilitation and Nursing Center ("Defendant" or "Beacon"), as follows:

**<u>NATURE OF THE ACTION</u>**

1. This action arises from Defendant's discrimination against Plaintiff because of her pregnancy, its adverse treatment of Plaintiff after she sought and used pregnancy-related workplace accommodations culminating in her unlawful termination on July 3, 2026 when she was approximately 26 weeks pregnant.

2. Plaintiff brings this action for pregnancy and sex discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. §§ 2000e et seq., and for adverse employment action arising from her requests for and use of pregnancy-related accommodations under the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. §§ 2000gg et seq.

3. Plaintiff also asserts claims for pregnancy discrimination, retaliation, and other unlawful employment practices under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 et seq., including Defendant's alleged failure to engage in the cooperative dialogue required under the NYCHRL.

4. Defendant's unlawful conduct deprived Plaintiff of equal employment opportunities and the protections afforded to pregnant employees under federal, state, and local law, resulting in substantial economic and non-economic injuries.

5. Plaintiff seeks all available legal and equitable relief, including back pay, front pay or reinstatement, compensatory damages, punitive damages to the extent permitted by law, interest, reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

6. This Court has original subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 because this action arises under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e et seq., and the Pregnant Workers Fairness Act, 42 U.S.C. §§ 2000gg et seq. Jurisdiction is further authorized by 42 U.S.C. §§ 2000e-5(f)(3) and 2000gg-2(a)(1).

7. This Court has supplemental jurisdiction over Plaintiff's claims under the New York State Human Rights Law and the New York City Human Rights Law pursuant to 28 U.S.C. § 1367(a), because those claims arise from the same employment relationship and course of conduct as Plaintiff's federal claims and form part of the same case or controversy.

8. Defendant is subject to personal jurisdiction in this District because it operates a skilled nursing and rehabilitation facility in Queens County, New York, and the employment practices challenged in this action arise from its operations in this District.

9. Venue is proper in the Eastern District of New York pursuant to 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices alleged herein occurred in Queens County, New York, within this District.

10. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2), to the extent applicable, because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. At all relevant times, Defendant operated the facility located at 140 Beach 113th Street, Rockaway Park, New York 11694, where Plaintiff's employment was based.

## PARTIES

11. Plaintiff Maggie Lee resides in New York.

12. From July 23, 2024, through July 3, 2025, Plaintiff was employed by Defendant as Director of Marketing

13. Defendant OPOP, LLC, doing business as Beacon Rehabilitation and Nursing Center, is a limited liability company that operates a skilled nursing and rehabilitation facility located at 140 Beach 113th Street, Rockaway Park, New York 11694.

14. At all relevant times, Defendant was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964, the Pregnant Workers Fairness Act, the New York State Human Rights Law, and the New York City Human Rights Law.

## ADMINISTRATIVE PREREQUISITES

15. On September 10, 2025, Plaintiff executed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), designated Charge No. 520-2025-08643, alleging discrimination based on pregnancy and sex, and retaliation.

16. The Charge identified Defendant by its trade name, Beacon Rehabilitation Nursing Center, and challenged Plaintiff's termination and Defendant's treatment of Plaintiff following her pregnancy disclosure and requests for pregnancy-related accommodations.

17. On September 14, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights concerning Charge No. 520-2025-08643.

18. Plaintiff received the Notice of Rights and commenced this action within ninety days of its receipt, in accordance with 42 U.S.C. § 2000e-5(f)(1).

## FACTUAL ALLEGATIONS

### A. Employment, Job Duties, and Performance

19. On or about July 23, 2024, Plaintiff commenced employment with Defendant as Director of Marketing.

20. Plaintiff’s base salary was $95,000.

21. Plaintiff's responsibilities included developing and maintaining relationships with hospitals and community organizations, identifying referral sources, conducting marketing and outreach activities, and coordinating with Defendant's admissions department.

22. Plaintiff was also responsible for communicating with hospital personnel to obtain information concerning hospitalized patients and their potential return to Defendant's facility.

23. Plaintiff performed her duties through visits to Defendant's facility, hospitals, and other referral sources, as well as through telephone and electronic communications.

24. During her employment, Plaintiff received positive verbal feedback concerning her performance.

25. In late 2024, Defendant awarded Plaintiff a performance bonus.

26. Prior to her termination, Plaintiff had not received any verbal or written disciplinary warnings.

27. Prior to her termination, Defendant had not placed Plaintiff on a performance improvement plan or issued her a formal negative performance evaluation.

## B. Plaintiff's Pregnancy Disclosure and the Introduction of Another Marketing Employee

28. In late March 2025, Plaintiff informed Defendant's Administrator, Dovid Bain, that she was pregnant.

29. Also in late March 2025, Plaintiff informed Regional Manager Betzy Nuite she was pregnant.

30. Plaintiff advised management that her expected delivery date was October 11, 2025.

31. On or about April 28, 2025, less than one month after Plaintiff disclosed her pregnancy, Defendant transferred Nik Seetaram from a sister facility to work as a Marketing Liaison.

32. Defendant informed Plaintiff that Mr. Seetaram would assist with marketing operations and was expected to assume her responsibilities during her anticipated maternity leave.

33. Defendant instructed Plaintiff to train Mr. Seetaram in her responsibilities, including, but not limited to, hospital outreach, referral development, admissions coordination, and community marketing.

34. Plaintiff complied with those instructions and introduced Mr. Seetaram to hospital personnel and professional contacts with whom she maintained relationships on Defendant's behalf.

35. As Mr. Seetaram became more involved in marketing operations, Plaintiff observed that responsibilities she had previously performed were increasingly being assigned to him.

36. Defendant assigned Mr. Seetaram responsibility for certain hospital referral sources and admissions-related activities that Plaintiff had previously handled.

37. On or about May 22, 2025, Plaintiff raised concerns with Sasha Rivera regarding the allocation of hospital referrals between herself and Mr. Seetaram and her ability to follow up on referrals assigned to him.

38. Ms. Rivera acknowledged Plaintiff's concerns and indicated that she would assign additional cases to Plaintiff.

## C. Pregnancy-Related Medical Needs, Accommodation Requests, and Leave Discussions

39. As her pregnancy progressed, Plaintiff informed management that her pregnancy was high-risk and that she anticipated a scheduled cesarean delivery.

40. During her pregnancy, Plaintiff requested adjustments to her working schedule to attend pregnancy-related medical appointments.

41. These adjustments included permission to begin later start times or earlier departure times for pregnancy related medical appointments.

42. Plaintiff offered to remain available by telephone and email during those periods.

43. Plaintiff made efforts to schedule medical appointments near the beginning or end of the business day to minimize interruptions to her work.

44. During the months preceding her termination, Plaintiff repeatedly contacted Human Resources representative David Schwartz to obtain information concerning maternity leave and related employment benefits.

45. Plaintiff sought information concerning the leave available to her, applicable procedures, and arrangements for her anticipated absence and return to work.

46. Mr. Schwartz informed Plaintiff that he needed to consult Administrator Dovid Bain concerning her maternity-leave inquiries.

47. Mr. Schwartz explained that the facility was uncertain about the leave arrangements applicable to a pregnant employee directly employed by Defendant, as distinguished from personnel employed through outside agencies.

48. Despite Plaintiff's repeated inquiries, Defendant did not provide her with the requested individualized maternity-leave information before her termination.

49. During the weeks preceding her termination, Plaintiff also discussed her anticipated delivery and leave arrangements with Ms. Nuite.

50. Those discussions included the possibility of taking approximately one week off to prepare for childbirth and a potential return-to-work date.

51. Plaintiff also communicated with management concerning anticipated absences and work arrangements, including by email to Ms. Nuite, Mr. Bain, and Sasha Rivera.

52. These pregnancy-related leave discussions remained unresolved prior to Plaintiff’s unlawful termination.

**D. Plaintiff's Pregnancy-Related Medical Examination on July 2, 2025**

53. In or about late June 2025, Plaintiff underwent an initial glucose screening as part of her prenatal medical care.

54. Following the screening, Plaintiff was advised to undergo an additional three-hour glucose tolerance test as soon as possible.

55. Plaintiff postponed the additional examination because of work commitments scheduled for June 30th and July 1, 2025.

56. On June 30, 2025, Plaintiff coordinated and participated in an educational in-service event involving visiting medical professionals and Defendant's nursing staff.

57. On July 1, 2025, Plaintiff continued performing marketing and outreach activities, including coordinating with representatives of the New York City Police Department's 100th Precinct concerning an upcoming community event.

58. On July 2, 2025, Plaintiff left work to receive a pregnancy-related medical examination.

**E. <u>The July 1, 2025 Patient-Status Communications</u>**

59. As part of her responsibilities as Director of Marketing, Plaintiff regularly communicated with hospital personnel to obtain updates concerning hospitalized patients and their potential return to Defendant's facility.

60. On June 30, 2025, Plaintiff spoke with hospital discharge personnel, including discharge planner Karla Sarante, who informed her that a patient remained medically unstable and was being weaned from respiratory support.

61. On July 1, 2025, Plaintiff continued following up concerning the patient's condition. Her telephone records reflect multiple calls to St. John's Episcopal Hospital at approximately 2:18 p.m., 2:19 p.m., 2:20 p.m., and 2:30 p.m.

62. At approximately 2:37 p.m., Plaintiff reported in a workplace group-message conversation that the patient remained medically unstable, based on information she understood had been provided by hospital personnel.

63. At approximately 3:15 p.m., Sasha Rivera questioned the accuracy of that information, stating that Defendant's Assistant Director of Nursing had received a report that the patient had died the previous day.

64. Plaintiff promptly responded that she would contact the hospital again to verify the information. Her telephone records reflect an additional call at approximately 3:17 p.m.

65. During the ensuing exchange, Plaintiff acknowledged the patient's reported death and explained that the discharge planner had previously informed her that the patient's condition had not changed.

**F. <u>Plaintiff's Termination</u>**

66. On July 3, 2025, Plaintiff reported to Defendant's facility for a scheduled meeting and was directed by Regional Manager Betzy Nuite to Administrator Dovid Bain's office.

67. During that meeting, Mr. Bain informed Plaintiff that she was terminated.

68. Defendant did not accuse Plaintiff of fabricating patient information or identify the July 1, 2025 incident as the reason for her termination.

69. When Plaintiff asked Ms. Nuite for an explanation, Ms. Nuite stated that "it wasn't working out".

70. Defendant's written termination letter, dated July 3, 2025, did not explain why Plaintiff was terminated.

71. At the time of her termination, Plaintiff was approximately 26 weeks pregnant, and Defendant's management was aware of her pregnancy-related medical needs and anticipated maternity leave.

72. The basis for Defendant's termination of Plaintiff was pre-text: Plaintiff was terminated because she was pregnant.

73. Following Plaintiff's termination, Nik Seetaram assumed the marketing responsibilities previously performed by Plaintiff.

## G. Defendant's Subsequently Asserted Justification

74. On March 18, 2026, Defendant submitted a Position Statement to the Equal Employment Opportunity Commission, asserting that Plaintiff had failed to monitor a hospitalized patient's condition and had fabricated information concerning the patient's medical status.

75. Plaintiff denies knowingly fabricating patient information or intentionally misleading Defendant.

76. Her contemporaneous telephone records reflect multiple calls to hospital personnel, while the workplace communications document her efforts to verify the patient's condition when conflicting information arose.

77. Defendant never asked Plaintiff 'what happened' prior to making the decision to terminate her.

78. Although Defendant subsequently identified the July 1, 2025 incident as the reason for Plaintiff's termination, neither the explanation provided to Plaintiff on July 3, 2025, nor her

written termination letter identified that incident or any alleged fabrication as the basis for her discharge.

79. The circumstances surrounding Plaintiff's termination, including Defendant's knowledge of her pregnancy and anticipated maternity leave, her contemporaneous efforts to obtain and verify patient information, and the timing of her discharge, reflect that Plaintiff's pregnancy played an unlawful role in Defendant's decision to terminate her employment.

## H. Circumstances Supporting an Inference of Discrimination and Resulting Harm

80. Defendant introduced Mr. Seetaram into its marketing operations less than one month after Plaintiff disclosed her pregnancy.

81. Defendant began transferring certain marketing responsibilities to Mr. Seetaram.

82. Plaintiff continued performing her assigned marketing responsibilities during the days immediately preceding her termination, as reflected in her contemporaneous end-of-day reports.

83. Plaintiff was terminated one day after receiving leave for a pregnancy-related medical examination.

84. At the time of her termination, Defendant was aware of Plaintiff's high-risk pregnancy and her continuing inquiries concerning anticipated maternity leave.

85. Plaintiff alleges that the foregoing circumstances, considered together, support an inference that Defendant's stated justification was pretextual and that Plaintiff's pregnancy and pregnancy-related accommodation needs played an unlawful role in Defendant's employment decisions.

86. As a result of Defendant's alleged unlawful conduct, Plaintiff lost wages and other compensation she otherwise would have earned from her employment.

87. Plaintiff also suffered emotional distress and other non-economic harm resulting from the loss of her employment while pregnant and preparing for childbirth.

## FIRST CAUSE OF ACTION
## PREGNANCY DISCRIMINATION — TITLE VII / PREGNANCY DISCRIMINATION ACT
## 42 U.S.C. §§ 2000e-2(a)(1), 2000e(k)

88. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

89. Plaintiff's pregnancy, childbirth, and related medical conditions are protected under Title VII as amended by the Pregnancy Discrimination Act. Plaintiff was qualified for her position and able to perform its essential functions.

90. After learning of her pregnancy, Defendant subjected Plaintiff to materially adverse treatment, including shifting core job responsibilities and ultimately terminating her employment.

91. The circumstances surrounding Plaintiff's pregnancy disclosure, the subsequent allocation of marketing responsibilities, Defendant's knowledge of her anticipated maternity leave, and the timing and circumstances of her termination support an inference that Plaintiff's pregnancy was a motivating factor in Defendant's employment decisions.

92. By this conduct, Defendant discriminated against Plaintiff with respect to the terms, conditions, and privileges of employment and discharged her because of sex, including pregnancy, in violation of Title VII and the PDA.

## SECOND CAUSE OF ACTION
## RETALIATION — TITLE VII
## 42 U.S.C. § 2000e-3(a)

93. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

94. Plaintiff sought pregnancy-related scheduling accommodations and medical leave arrangements in good faith to exercise and secure the employment protections afforded to her under federal law.

95. Defendant, through its management and Human Resources personnel, was aware of Plaintiff's pregnancy-related requests.

96. Following those requests and while discussions concerning her anticipated maternity leave remained ongoing, Defendant terminated Plaintiff's employment one day after she took time away from work for a pregnancy-related medical examination.

97. Plaintiff alleges that Defendant terminated her employment in retaliation for her protected pregnancy-related requests, in violation of Title VII.

**THIRD CAUSE OF ACTION**
**ADVERSE ACTION FOR REQUESTING OR USING PREGNANCY ACCOMMODATION — PWFA**
**42 U.S.C. § 2000gg-1(5)**

98. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

99. At all relevant times, Plaintiff was a qualified employee and Defendant was a covered entity within the meaning of the Pregnant Workers Fairness Act ("PWFA").

100. Plaintiff communicated known limitations related to her pregnancy and requested reasonable accommodations, including scheduling adjustments for pregnancy-related medical appointments and arrangements concerning anticipated childbirth-related leave.

101. Although Defendant approved certain scheduling adjustments, Defendant subsequently subjected Plaintiff to adverse employment action, including termination, following her requests for and use of pregnancy-related accommodations.

102. Plaintiff alleges that Defendant took adverse employment action against her on account of her requesting or using reasonable pregnancy-related accommodations, in violation of 42 U.S.C. § 2000gg-1(5).

**FOURTH CAUSE OF ACTION**
**PREGNANCY DISCRIMINATION – NYSHRL**
**N.Y. Exec. Law § 296(1)(a)**

103. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

104. At all relevant times, Plaintiff was protected from discrimination because of sex, including pregnancy and related medical conditions, by the NYSHRL.

105. Defendant treated Plaintiff adversely because of pregnancy by transferring significant aspects of her job responsibilities and terminating her employment while she was pregnant, under circumstances supporting an inference that pregnancy was a motivating factor.

106. By the foregoing conduct, Defendant discriminated against Plaintiff in the terms and conditions of her employment and discharged her in violation of N.Y. Exec. Law § 296(1)(a).

**FIFTH CAUSE OF ACTION**
**RETALIATION FOR REQUESTING REASONABLE ACCOMMODATION — NYSHRL**
**N.Y. Exec. Law § 296(7)**

107. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

108. Plaintiff engaged in activity protected under the NYSHRL by requesting reasonable accommodations for her pregnancy-related medical needs, including scheduling flexibility and arrangements concerning anticipated childbirth-related leave.

109. Defendant was aware of Plaintiff's requests through its management and Human Resources personnel.

110. Following Plaintiff's requests and use of pregnancy-related accommodations, Defendant subjected Plaintiff to adverse employment action, culminating in her termination on July 3, 2025.

111. Plaintiff alleges that Defendant's actions were motivated, at least in part, by her requests for reasonable accommodation and constituted unlawful retaliation in violation of N.Y. Exec. Law § 296(7).

**<u>SIXTH CAUSE OF ACTION</u>**
**PREGNANCY / GENDER DISCRIMINATION — NYCHRL**
**N.Y.C. Admin. Code § 8-107(1)(a)**

112. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

113. Plaintiff was protected against discrimination based on gender, including pregnancy, childbirth, and related medical conditions, under the New York City Human Rights Law ("NYCHRL").

114. Defendant treated Plaintiff less well because of her pregnancy by progressively transferring certain marketing responsibilities to another employee and terminating her employment while she was pregnant and preparing for childbirth.

115. Plaintiff's pregnancy played an unlawful role in Defendant's treatment of Plaintiff, in violation of N.Y.C. Admin. Code § 8-107(1)(a), independently construed in accordance with N.Y.C. Admin. Code § 8-130.

**<u>SEVENTH CAUSE OF ACTION</u>**
**RETALIATION FOR PREGNANCY-RELATED ACCOMMODATION REQUESTS — NYCHRL**
**N.Y.C. Admin. Code § 8-107(7)**

116. Plaintiff engaged in protected activity under the NYCHRL by requesting reasonable accommodations for pregnancy-related medical appointments and communicating her need for anticipated childbirth-related leave arrangements.

117. Defendant was aware of Plaintiff's requests through its management and Human Resources personnel.

118. Defendant subsequently subjected Plaintiff to adverse treatment, culminating in her termination, under circumstances supporting an inference of a causal connection between Plaintiff's protected requests and Defendant's actions.

119. Defendant's conduct was reasonably likely to deter an employee from requesting or using pregnancy-related accommodations and constituted unlawful retaliation in violation of N.Y.C. Admin. Code § 8-107(7).

## EIGHTH CAUSE OF ACTION
## FAILURE TO ENGAGE IN COOPERATIVE DIALOGUE — NYCHRL
## N.Y.C. Admin. Code § 8-107(28)

120. Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

121. Plaintiff informed Defendant of her high-risk pregnancy, anticipated cesarean delivery, and need for pregnancy-related medical care and childbirth-related leave.

122. Plaintiff repeatedly sought information and arrangements concerning her anticipated maternity leave, including the period of leave and her expected return to work.

123. Although Defendant granted certain scheduling accommodations, Plaintiff alleges that Defendant failed to complete a timely and individualized cooperative dialogue concerning her anticipated childbirth-related leave needs and did not provide a final written determination addressing those needs before terminating her employment.

124. By the foregoing conduct, Defendant failed to comply with its obligations under N.Y.C. Admin. Code § 8-107(28).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in her favor and against Defendant, awarding the following relief:

(a) A declaration that Defendant engaged in the unlawful employment practices alleged herein;

(b) Back pay, lost employment benefits, and other economic damages established by the evidence, subject to applicable mitigation rules and without duplicative recovery;

(c) Reinstatement or, in lieu of reinstatement where appropriate, front pay and other equitable relief;

(d) Compensatory damages, including damages for emotional distress and other noneconomic injury, to the extent authorized by each applicable statute;

(e) Punitive damages to the extent authorized by law and supported by the evidence, subject to applicable statutory limitations;

(f) Prejudgment and post judgment interest as permitted by law;

(g) Reasonable attorneys' fees, disbursements, and litigation costs under the applicable statutes;

(h) Appropriate injunctive relief to remedy the proven violations; and

(i) Such other and further relief as the Court deems just and proper.

Dated: November 13, 2026
New York, New York

Respectfully submitted,

*/s/ Jacob Aronauer*
Jacob Aronauer
*Attorney for Plaintiff*